UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UNITED STATES OF AMERICA | REPORT AND RECOMMENDATION |
| v. | |
| ALFREDO ALVAREZ-MARTINEZ, | 12-CR-00322-RJA-JJM |
| Defendant. | |

_____

Before me is defendant's motion to suppress physical evidence seized pursuant to an April 12, 2012 search warrant I issued for the lower apartment of 176 Germaine Street in Buffalo, New York, and to suppress statements defendant made on April 17, 2012 following the execution of the search warrant [24, 37].[1]  Oral argument was held before me on February 19 and April 11, 2013 [26, 38].[2]  For the following reasons, I recommend that defendant's motion to suppress be denied.

**BACKGROUND**

Defendant is charged in an indictment with, *inter alia*, possession with intent to distribute and distributing a mixture and substance containing heroin, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B) [15].  The April 12, 2012 search warrant (12-mj-01078(JJM)) that led to these charges was supported by the April 12, 2012 affidavit of Drug Enforcement Administration ("DEA") Special Agent Joseph S. Bongiovanni [39].  SA Bongiovanni's affidavit relied primarily on information provided by two confidential sources.  The first confidential

___

[1]  Bracketed references are to the CM/ECF docket entries.

[2]  At the February 19, 2013 oral argument defendant withdrew all other aspects of his pretrial motion [24] as moot. February 19, 2013 Text Order [26].

source ("CS#1") stated that defendant "would sell CS#1 heroin directly from his residence located at 176 Germaine Street". Id., ¶6. Using CS#1, four controlled purchases of heroin were made directly from defendant on December 12, 2011, January 4, 2012, February 7, 2012 and March 6, 2012. Id., ¶7. These controlled purchases occurred on the porch of or inside 176 Germaine Street. Id., ¶¶9-26. In addition to these controlled purchases, on April 10, 2012 "Agents observed [defendant] exit the residence at 176 Germaine Street . . . and proceed on foot to the corner of Germaine and Grote Streets", where "agents observed [defendant] complete what appeared to be a drug transaction with a white male". Id., ¶7.

CS#1 stated that defendant lives with his girlfriend Kristine V. Nieves. Id. The second confidential source ("CS#2"), who provided "valuable information" in prior investigations, and utility records confirmed that he resided in the lower apartment of 176 Germaine Street with Ms. Nieves. Id., ¶8. CS#2 "has witnessed heavy heroin trafficking by [defendant] outside of the residence" and that defendant "always distributes heroin outside his residence but keeps the heroin inside the house." Id. According to CS#2, defendant "has cameras installed on the outside of [176 Germaine Street] for surveillance to detect the presence of law enforcement." Id.

Since defendant's motion to suppress was not supported by an affidavit or declaration from plaintiff and made only skeletal arguments as to why the search warrant for 176 Germaine Street was deficient, I provided defendant with an opportunity to "file an affidavit (or declaration) in support of his motions to suppress physical evidence and statements, and provide further specification as to the basis for his challenge to the search warrant". February 19, 2013

Text Order [26].³ In response, defendant submitted a supplemental suppression motion [37] particularizing his challenge to the search warrant, and an affidavit from defendant in support of his standing to challenge the search warrant, stating that "[f]or the 2 years prior to April 17, 2012, I had spent 3-4 days and nights a week at this residence, staying with my wife and child" [37-1].⁴ Although I question whether defendant's affidavit suffices to establish his standing to contest the search of 176 Germaine Street, the government did not contest his standing at the April 11, 2013 oral argument.⁵

Since I signed the search warrant at issue, at oral argument I provided the parties with an opportunity to have these issues decided by another Magistrate Judge, but they agreed that I should decide them.

## ANALYSIS

**A.  Suppression of Physical Evidence**

Defendant argues that the last alleged controlled purchase at 176 Germaine Street occurred on March 6, 2012, which was more than 30 days before the issuance of the April 12,

---

³ With the government's consent, I provided defendant with an extension of time to make this submission. March 1, 2013 Text Order [31].

⁴ Defendant submitted no affidavit (or declaration) in support of his motion to suppress statements.

⁵ *See* United States v. Jimenez, 789 F.2d 167, 170 (2d Cir. 1986) (affirming that the defendant lacked standing to contest search of an apartment, where he "at most, had occasional access to an apartment, upon his specific request of the owner for the key. Jimenez had to relinquish the key upon termination of his use, and he claims to have had no control over the access of others to the apartment, even when he had the key").

2012 search warrant, thereby rendering probable cause stale. Rooth Affirmation [37], pp. 2-3.[6] He also argues that I should disregard the April 10, 2012 drug transaction allegedly observed by the agents because "[t]his is a conclusory statement without the detail necessary for the Magistrate to accurately evaluate what had occurred." Id., p. 3. Even if I disregard the April 10, 2012 observations of the agents (Bongiovanni Affidavit [39], ¶7), I conclude that the remaining information provided in support of the search warrant was not stale.

"Deciding whether the evidence justifies a *current* finding of probable cause or is too stale is simply an aspect of th[e] commonsense determination by the magistrate." United States v. Melissas, 2005 WL 2414550, *2 (S.D.N.Y. 2005) (emphasis in original). "Two critical factors in determining whether facts supporting a search warrant are stale are the age of those facts and the nature of the conduct alleged to have violated the law." United States v. Ortiz, 143 F.3d 728, 732 (2d Cir.), cert. denied, 525 U.S. 910 (1998). "[W]hen the supporting facts present a picture of continuing conduct or an ongoing activity, the passage of time between the last described act and the presentation of the application becomes less significant." Id. "Narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." United States v. Rowell, 903 F.2d 899, 903 (2d Cir. 1990). Thus, "in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." Ortiz, 143 F.3d at 732-33. See United States v. Washington, 2012 WL 5438909, *8 (S.D.N.Y. 2012) ("Courts in this district have repeatedly concluded that narcotics offenses are the sort of crime for which even months-old information can support probable

---

[6] Since the document is not paginated, I have used the CM/ECF numbering.

cause"); Melissas, 2005 WL 2414550 at *2 ("Courts have . . . found probable cause to remain current in narcotics cases even where the gap between the most recent information and the search was substantial").

The information contained in SA Bongiovanni's supporting affidavit supports an inference that defendant was engaging in ongoing drug trafficking from 176 Germaine Street. In addition to there being four controlled purchases which occurred at this location from December 12, 2011 through March 6, 2012, CS#2 witnessed "heavy heroin trafficking by [defendant] outside of the residence" Bongiovanni Affidavit [39], ¶¶8-26. Because of the ongoing nature of defendant's narcotics trafficking from 176 Germaine Street, I conclude that the probable cause supporting the search warrant was not stale. *See* Melissas, 2005 WL 2414550 at *2 (more than two month delay in seeking warrant in drug trafficking case did not render probable cause stale); Rowell, 903 F.2d at 903 ("Given the continuous nature of narcotics conspiracies and Rowell's statements to the Florida undercover officer about his on-going marijuana distribution operation, the approximately 18-month delay between procuring the informants' statements and seeking the wiretap warrant did not render the information stale").

Defendant also argues that CS#2's credibility is suspect since there was no corroboration provided by SA Bongiovanni of CS#2's observation that there were cameras installed on the outside of 176 Germaine Street. Rooth Affirmation [37], p. 3. "Information from an informant may be sufficiently reliable to support a probable cause finding if the informant has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence." United States v. Lucas, 462 Fed.Appx. 48, 50 (2d Cir. 2012) (Summary Order).

The information provided by CS#2 readily satisfies both of these tests. SA Bongiovanni stated that "CS#2 has been proven a reliable confidential informant and has offered valuable information to DEA Agents in prior investigations." Bongiovanni Affidavit [39], ¶8. CS#2's reliability was also established by the corroboration of some of the information he provided. For example, the information which CS#2 provided, that defendant resided at 176 Germaine Street with Ms. Nieves, was confirmed by utility records. Id. Likewise, CS#2's information that defendant was trafficking heroin from his residence (id.) was confirmed by the controlled purchases. Id., ¶¶9-26.

It may have been possible for SA Bongiovanni to corroborate the presence of surveillance cameras on the outside of 176 Germaine Street. However, the fact that he did not do so (or omitted from his affidavit that he did so) is of no consequence. Since "the affidavit established that the informant was reliable, police corroboration of every statement that the informant made was not necessary." United States v. Royster, 2007 WL 4336321, *19 (M.D.Ga. 2007). *See* United States v. Cruz-Lopez, 2011 WL 5388818, *2 (W.D.Ky. 2011) ("Even when corroboration is necessary, the information provided by the informant need only be 'corroborated to some degree'" *quoting* United States v. Dyer, 580 F.3d 386, 392 (6th Cir. 2009)).

Therefore, I recommend the defendant's motion to suppress physical evidence be denied.

**B.     Suppression of Statements**

Defendant moves to suppress his statements "as fruit of the poisonous tree since it resulted from the search warrant." Rooth Affirmation [24], ¶IX(II). Alternatively, defendant's

counsel requests a suppression hearing, arguing that his "client was clearly under arrest once law enforcement entered that house, and the statements . . . were not made voluntarily." Id. Although I provided defendant with an opportunity to file an affidavit (or declaration) in support of his motion to suppress statements (February 19, 2013 Text Order [26]), he did not do so.

"[A]n attorney's affidavit, absent personal knowledge is insufficient to justify a suppression hearing." United States v. Cook, 348 F.Supp.2d 22, 28 (S.D.N.Y. 2004). Moreover, "[i]f the defendant's request for a hearing is not accompanied by a sufficient specification of the factual basis for the characterization [of the statement as involuntary], the district court is not required to hold a suppression hearing." Id. *See also* United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) ("A bald assertion that a statement was involuntary . . . could be based on any of a number of factual premises such as coercion, lack of *Miranda* warnings, or lack of competence. Without specification of the factual basis for such a characterization, the district court is not required to have a hearing"). Therefore, I recommend that defendant's motion to suppress statements be denied.

## CONCLUSION

For these reasons, I recommend that defendant's motion to suppress physical evidence and statements [24, 37] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by May 20, 2013 (applying the time frames set forth in Fed. R. Crim. P. ("Rules") 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this]

decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: May 3, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge